## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

THOMAS J. PROFETTO,

      Petitioner,

v.                            Case No: 2:17-cv-533-SPC-MRM

SECRETARY, DOC and
FLORIDA ATTORNEY
GENERAL,

      Respondents.

_____/

## OPINION AND ORDER[1]

Before the Court is Thomas James Profetto's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 8).

## Background

The State of Florida charged Profetto with the attempted murder of Randall Robinett. (Doc. 15 at 26). Attorney Thomas Marryott entered his appearance and a not-guilty plea on Profetto's behalf. (Doc. 15 at 29). "At trial, the State presented evidence that Profetto, Jevon Gibson, and Tatijana Dimic formed a plan to rob another friend [Robinett] by ambushing him at a staged

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them. The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

break-down of Dimic's automobile." *Profetto v. State*, 198 So. 3d 684, 685 (Dist. Ct. Fla. App. 2015). "The plan did not unfold as expected, however, and Profetto and Gibson ended up charging the victim's vehicle on foot while firing numerous shots at it." *Id.* Tatijana Dimic testified against Profetto as part of a plea deal, but Gibson did not. *Id.* The jury found Profetto guilty of first-degree murder, and the Court sentenced him to a 35-year prison sentence with a mandatory minimum of 20 years. (Doc. 16 at 4, 10). The Second District Court of Appeal of Florida (2nd DCA) affirmed the conviction. (Doc. 17 at 184).

Profetto filed a postconviction motion, raising 14 grounds of ineffective assistance of counsel. (Doc. 17 at 213-262). The postconviction court summarily denied the motion in part and held an evidentiary hearing for the remaining grounds. (Doc. 20 at 36). After appointing Profetto counsel and conducting a hearing, the postconviction court denied Profetto's postconviction motion. (Doc. 21 at 304). On review, the 2nd DCA affirmed in part and remanded to allow Profetto to amend his claim that Merryott should have objected to his sentence based on its disparity with Gibson's sentence. *Profetto,* 198 So. 3d at 685. The postconviction court denied the amended ground (Doc. 22 at 385), and the 2nd DCA affirmed (Doc. 23 at 105).

In his Habeas Petition, Profetto raises eight grounds of ineffective assistance of counsel. Respondent concedes that the Petition is timely and that Profetto exhausted his state court remedies for all eight grounds.

## Applicable Habeas Law

### A. AEDPA

The Antiterrorism Effective Death Penalty Act (AEDPA) governs a state prisoner's petition for habeas corpus relief. 28 U.S.C. § 2254. Relief may only be granted on a claim adjudicated on the merits in state court if the adjudication:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard is both mandatory and difficult to meet. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014). A state court's violation of state law is not enough to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles set forth in the decisions of the United States Supreme Court when the state court issued its decision. *White*, 134 S. Ct. at 1702; *Casey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). Habeas relief is appropriate only if the state court decision was "contrary to, or an unreasonable application of," that federal law. 28 U.S.C. § 2254(d)(1). A

decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of Supreme Court precedent it the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "[T]his standard is difficult to meet because it was meant to be." *Sexton v. Beaudreaux*, 138 S. Ct. 255, 2558 (2018).

Finally, when reviewing a claim under 28 U.S.C. § 2254(d), a federal court must remember that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the

burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.").

**B. Ineffective Assistance of Counsel**

In *Strickland v. Washington*, the Supreme Court established a two-part test for determining whether a convicted person may have relief for ineffective assistance of counsel. 466 U.S. 668, 687-88 (1984). A petitioner must establish: (1) counsel's performance was deficient and fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defense. *Id.* This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. *Burt,* 134 S. Ct. at 13 (citing *Cullen v. Pinholster,* 131 S. Ct. 1388, 1403 (2011)).

When considering the first prong, "courts must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Sealey v. Warden,* 954 F.3d 1338, 1354 (11th Cir. 2020) (quoting *Strickland,* 466 U.S. at 689).

The second prong requires the petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 1355 (quoting *Strickand,*

466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "An ineffective-assistance claim can be decided on either the deficiency or prejudice prong." *Id.* And "[w]hile the *Strickland* standard is itself hard to meet, 'establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult.'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011)).

## Analysis

### A. Ground 1: Trial counsel misinformed Profetto of his sentencing range when discussing a plea offer

Profetto claims Merryott misinformed him that his maximum sentencing exposure was 20 years, and that if he knew he faced a mandatory 25-year sentence, he would have accepted the State's 10-year plea offer. After an evidentiary hearing, the postconviction court made these findings:

> 13…Trial Counsel testified that he discussed the 20 to 25 year minimum mandatory penalty with the Defendant while the ten year offer was pending on January 30, 2009. Trial Counsel further testified that the Defendant was never interested in the State's plea offer because he did not believe that the co-defendants would testify against him. Lastly Trial Counsel informed the Defendant that if the Defendant was found guilty at trial then he faced life in prison. The Court does not find the Defendant's self-serving testimony credible.

(Doc. 21 at 309 (citations omitted)). The postconviction court then held that Profetto failed to satisfy either *Strickland* prong.

Profetto argues the postconviction court's reliance on Merryott's testimony was objectively unreasonable. As support, Profetto attempts to tease out several inconsistencies in Merryott's deposition.[2] Profetto focuses on two aspects of Merryott's testimony: (1) whether he informed Profetto of the mandatory minimum; and (2) when and if the plea offer expired. (Doc. 32 at 5-6). On the first issue, Merryott repeatedly testified that he discussed the sentencing range with Profetto and that Profetto knew the risk of going to trial. (*see, e.g.*, Doc. 21 at 331). Profetto points to a moment in cross-examination when Merryott initially gave a contradictory answer, then corrected it when the question was rephrased:

> Q.   In regards to Ground 13, what is the maximum sentence that you informed Mr. Profetto that he could face if he lost at trial?
>
> A.   I don't recall specifically telling him that.
>
> Q.   Okay. And what is the maximum that the charges carried?
>
> A.   Life.
>
> Q.   Okay. And at any time did you inform Mr. Profetto that if he lost at trial he was looking at life?
>
> A.   Yes, I did.

---

[2] The parties deposed Merryott several months before the evidentiary hearing because he suffered from a serious medical condition. Profetto's attorney was present, and Profetto participated by telephone. Merryott passed away before the hearing.

(Doc. 21 at 350).  This brief inconsistency does not render the state court's reliance on Merryott's testimony unreasonable.

On the second issue, Profetto points to inconsistencies about when and if the plea offer expired.  Based on the notation "1/30" on the written plea offer, Merryott believed he discussed the offer with Profetto on January 30, but he was not sure what year.  (Doc. 21 at 346).  Merryott also recalled that the prosecutor threatened to withdraw the plea offer if Merryott took depositions. (Doc. 21 at 346).  And Profetto claims the first depositions were conducted in September 2007, which calls Merryott's recollection of the relevant dates into question.  This issue is a red herring.  While Profetto and Merryott's discussion about the plea offer might not have happened on January 30, 2009—as the postconviction court found—it did happen.  Profetto acknowledged as much himself.  Profetto testified he told Merryott to try negotiating the offer down to be comparable to the sentences of Tatijana Dimic (three years) and Gibson (five years).  (Doc. 22 at 89).

Profetto has not rebutted the postconviction court's factual findings with clear and convincing evidence.  Record evidence shows that Merryott advised Profetto of the sentencing range and notified Profetto of the plea offer, and that Profetto chose not to accept it.  Ground 1 is denied.

**B. Ground 2: Trial counsel misadvised Profetto about testifying at trial**

Profetto claims Merryott advised him not to testify because Merryott did not believe the prosecution met its burden of proof.  As a result, Profetto chose not to testify.  Merryott confirmed this.  (Doc. 21 at 329).  After a hearing, the postconviction court made the following findings:

> 8. Trial Counsel testified that the decision to testify is a personal decision that is always left to the Defendant.  Trial Counsel stated that he and the Defendant did discuss whether he would testify and that counsel advised after the State rested that he believed that the State had not proven the elements and advised the Defendant that he did not believe he needed to testify, but that it was the Defendant's decision.  Trial counsel testified that after their discussion, it was the Defendant's decision not to testify, and that he did not coerce the Defendant or force him to make a decision one way or the other.  Counsel testified that he had concerns about the Defendant testifying, which he conveyed to the Defendant, including his client['s] prior conviction for a crime of dishonesty and the experience of the prosecutor.  Defendant indicated that he had to testify because he had an alibi that he was with Stephanie [sic] Dimic, during the time the charged crime was alleged to have been committed and that the State's star witness, Tatiana [sic] Dimic was making up her story out of revenge.  Trial counsel testified that the Defendant never discussed an alibi defense and that in fact Stephanie [sic] Dimic was listed as a State witness and was brought to trial from Indiana to testify as a rebuttal witness for the State, if needed.

> 9. Further, the trial transcript reflects a colloquy between the Defendant and the Court regarding Defendant's decision not to testify.  The Defendant clearly indicated to the Court that he understood that his decision not to testify was his decision.  He further indicates that he had discussed his decision with his attorney.  The Court finds counsel's testimony credible.  It appears that in hindsight, Defendant now regrets his decision to exercise his right to remain silent.

(Doc. 21 at 307-8).  The court concluded that Profetto failed to establish either prong of *Strickland*.

Profetto argues the postconviction court failed to adequately consider Merryott's knowledge of his alibi defense because it did not mention Merryott's opening statement.  Had Profetto taken the stand, he would have testified that he was asleep with Stefanie Dimic at the time of the crime.  During opening statements at trial, Merryott previewed Profetto's expected testimony:

> Tom will tell you that on the date and time they had indeed agreed to go to New Jersey.  He was over at his brother's house with Stephanie [sic], and quite a few other people.  There was drugs. There was alcohol.  Stephanie [sic] went to sleep on the couch.  Tom went to sleep on the couch with her.

(Doc. 20 at 222).  At his deposition, Merryott had no recollection of Profetto mentioning an alibi defense.  (Doc. 21 at 337).  But Merryott did recall that the state had Stefanie Dimic on hand to impeach Profetto if he took the stand. (Doc. 21 at 340).

Merryott's memory may have been imperfect when he gave his deposition, but that does not render his testimony wholly incredible.  Nor does it render the postconviction court's reliance on that testimony objectively unreasonable.   What is more, the undisputed evidence supports the postconviction court's ruling.  Merryott advised Profetto not to testify, and Profetto chose to heed that advice.

The postconviction court's denial or relief on this ground was consistent with Eleventh Circuit precedent—even though Merryott's advice was based partly on an ultimately mistaken expectation of an exoneration.  In *Maharaj*, trial counsel explained to the petitioner his right to testify but advised him to forego that right.  *Maharaj v. Sec'y for Dep't of Corrs.*, 432 F.3d 1292, 1317-18 (11th Cir. 2005).  Counsel's advice was based in part on his mistaken belief that the Maharaj had two outstanding warrants in Great Britain, which were mentioned in newspaper articles.  *Id.* at 1318.  The Eleventh Circuit held, "The tactical decision to advise petitioner against testifying because of the dangerous cross-examination that could ensue was utterly unaffected by the truth or falsity of the articles and cannot be a sound basis for a claim of ineffective assistance of counsel."  *Id.* at 1319.

Like in *Maharaj*, Merryott's advice was partly flawed.  He believed—ultimately incorrectly—that the state had not established every element of the crime.   But Merryott was also concerned about cross-examination, impeachment evidence, and a rebuttal witness.   Merryott's mistaken expectation of a defense verdict did not negate those valid concerns.  The postconviction court correctly found that Merryott was not constitutionally deficient when he advised Profetto not the testify.  *See McNeal v. Wainwright*, 722 F.2d 674, 676 (11th Cir. 1984) ("Counsel will not be deemed unconstitutionally deficient because of tactical decisions").

Even if Merryott's advice was unconstitutionally deficient, Profetto has not shown prejudice. The record includes a police interview of the prosecution's rebuttal witness, Stefanie Dimic. She stated that Profetto left with her sister on the night of the crime and returned the next morning. (Doc. 22 at 177-78). Thus, Profetto's self-serving alibi testimony likely would have carried little to no weight with the jury. And it would have been risky, for the reasons stated by Merryott and the postconviction court. Ground 2 is denied.

## C. Grounds 3: Trial counsel failed to object to Profetto's leg restraint

During trial, Profetto wore a leg restraint device under his pants. He suspects the jury saw and heard the device and faults Merryott for not raising the issue to the trial court. The postconviction made these findings:

> 4...Defendant testified at the evidentiary hearing that the leg restraint was concealed underneath his suit pant that that a bulge could be seen. Defendant further testified that the leg restraint would lock if the knee bent too much and that the leg restraint did lock as he approached the bench during one bench conference during jury selection. The Defendant testified that he believed that the jury could hear the device lock however he also testified that his counsel was not aware that the device had locked.

> 5...Trial Counsel testified that he never became aware through his own observation, nor notification by the Defendant, that the Defendant had any problems with the leg restraint with regards to the device locking or being visible in the courtroom. Trial counsel further testified that the leg restraint was not visible and if it had been he would have brought the matter to the court's attention. Although the Defendant speculated that the jurors knew that he was wearing a brace, he provided no evidence to indicate what gave him that impression. Trial counsel testified that he never heard

the leg brace make any creaking, snapping, or popping sounds during the trial.

(Doc. 21 at 305-6 (citations omitted)).  The court found Merryott's testimony more credible than Profetto's and held that Profetto failed to satisfy either prong of *Strickland*.

Profetto complains that the postconviction court's findings omitted certain details from his postconviction motion.  But the court accurately summarized Profetto's and Merryott's testimony.  Thus, the postconviction court decision was based on a reasonable determination of the facts.  Profetto also claims that testimony from a bailiff and security camera footage would show that he fell twice in the "bullpen" because of the leg brace.  That evidence was not presented to the state court, so it cannot be considered here.  And anyhow, evidence that Profetto fell outside the presence of the jury is not relevant.

Profetto has not shown by clear and convincing evidence that the postconviction court erred in its factual determination.  And based on those facts, the Court agrees that Profetto failed to establish either prong of *Strickland*.  Ground 3 is denied.

### D. Ground 4: Trial counsel failed to object to the prosecutor's improper vouching of two state witnesses

Profetto argues Merryott should have objected to three statements the prosecutor made during closing argument. While summarizing Tatijana Dimic's testimony, the prosecutor said, "And then you have to also consider, at that point, as she's sitting in the police station, what would be her reason to lie about the people that are with her?" (Doc. 17 at 64). Moments later, the prosecutor discussed the victim's testimony:

> The other testimony that came out was, that Mr. Robinett, afterwards, after being shot, going home, getting his roommate, heading to the hospital, saw the car again. And that he did see the Caucasian up there, which – you know, you have to determine if he's telling you the truth, too. Is there any reason that he'd have to lie to you about that? And I'd suggest to you that if he's going to lie, and his main purpose is that he wants to get Mr. Profetto, you know, it's much better to lie and say, you know, I saw him shoot me, or I saw him in the car. But he didn't do that. He didn't – there's nothing about Mr. Robinett's testimony that you could consider disingenuous.

(Doc. 17 at 65-66). Finally, during rebuttal, the prosecutor responded to a portion of Marryott's argument:

> Now, one of the last things he said was, well, what about this burglary that happened at Mr. Robinett's house that my client had nothing to do with? Use your memory. Do you remember any testimony from Mr. Robinett that his house was burglarized? The only thing that was brought up was by Mr. Marryott, when he asked a question of Tatijana. And she said, I don't know what you're talking about. There's been no evidence that his house was burglarized while he was away.

(Doc. 17 at 82).

The postconviction court denied this ground before the evidentiary hearing. After summarizing relevant precedent, the court found:

> 35. Upon review of the transcript of closing arguments, the Court can find no improper bolstering. At no point does the State place the prestige of the government behind the witness. These statements seem designed to request the jury determine for themselves the credibility of the witness, and to remind the jury of testimony elicited at trial. As such this claim can be denied without evidentiary hearing.

(Doc. 20 at 47-48). This Court agrees.

A prosecutor may not "bolster a witness's testimony by vouching for that witness's credibility." *United States v. Contreras Maradiaga*, 987 F.3d 1315, 1327 (11th Cir. 2021). But that rule does not "prevent the prosecutor from commenting on a witness's credibility, which can be central to the government's case." *Id.* The Eleventh Circuit explained the difference:

> While a prosecutor may not make personal assurances about a witness's veracity, such as by stating "I believe the witness is telling the truth," a prosecutor is permitted to comment on a witness's credibility and indicate his opinion or knowledge of the case if the prosecutor makes it clear that the conclusions he is urging are conclusions to be drawn from the evidence.

*Id.*

The prosecutor's statements in Profetto's trial were not improper vouching. Rather, he urged the jury to find the state's witnesses credible based on the evidence. And the prosecutor did not—as Profetto contends—refer to

evidence not presented to the jury when countering Merryott's argument about a burglary.  He instead encouraged the jury to consider only the evidence they heard at trial.  Ground 4 is denied.

### E. Ground 5: Trial counsel failed to impeach Tatijana Dimic

Profetto contends that although Merryott impeached Tatijana Dimic at least five times, he missed five other opportunities to do so.  The Court will address each of the testimonial statements Profetto claims should have been impeached.

#### 1. *Tatijana never dated the victim*

At trial, Tatijana stated she and the victim, Randy Robinett, where friends and denied any romantic or sexual relationship with him.  (Doc. 16 at 333).  Profetto argues Merryott should have impeached Tatijana with the following exchange during a police interview:

> MC: And how do you know Randy?
>
> TD: Uh, uh, a girlfriend introduced me to him, like, about three, almost four years ago.  And I just went out with him.
>
> MC: What would you categorized your relationship with him?  Are you friends?  Are you –
>
> TD: Yeah, friends.

(Doc. 26-2 at 2).

The postconviction court did not address this sub-ground, but it clearly lacks merit.  Tatijana's pretrial statement is not meaningfully inconsistent

with her trial testimony. An attempt to impeach her on this point would not likely have helped Profetto's case. In fact, such a flimsy attempt to impeach Tatijana might have undermined Merryott's successful attacks on her credibility. The Court denies relief on this sub-ground.

### 2. *Tatijana dated Profetto*

At trial, Tatijana described Profetto as her ex-boyfriend. (Doc. 16 at 329). Profetto acknowledges this to be true, but he believes Merryott should have impeached Tatijana with her prior denials that they dated. (*See* Doc. 26-2 at 2-3). The postconviction court apparently misunderstood this claim. It said, "After review of the trial testimony, the Court finds that Defendant's claim is refuted by the record. Dimic never denied being in a relationship with Defendant [at trial]." (Doc. 20 at 40).

Profetto argues that by showing Tatijana lied in her previous statements, Merryott could have damaged her credibility. But Merryott repeatedly impeached her trial testimony with inconsistent statements, and she admitted that she lied to the police multiple times. (Doc. 16 at 356-60; Doc. 17 at 1). Impeaching Tatijana's true trial testimony that she dated Profetto with earlier false statements would not likely have affected the outcome of the trial. This sub-ground is denied.

### 3. *Profetto had never asked Tatijana to aid in a robbery before*

This sub-ground does not relate to Tatijana's trial testimony. Rather, Profetto contends Merryott should have highlighted two inconsistent statements she made before trial. Profetto claims Tatijana alternatingly stated that Profetto did and did not ask her to help him rob Robinett months before the crime. The postconviction court rejected this argument because the inconsistencies in prior statements is relatively insignificant and, more importantly, this impeachment would have required Merryott to present inculpatory evidence. The Court agrees. This attack on Tatijana's credibility would have required Merryott to elicit testimony that Profetto had contemplated robbing the victim months prior. The damage of that testimony would have far outweighed any benefit. This sub-ground lack merit.

### 4. *Profetto broke up with Tatijana on her birthday*

At trial, the prosecutor asked Tatijana when she and Profetto broke up, and she said, "I think it was on my birthday." (Doc. 16 at 331). Profetto contends this "was a material matter one would expect to have reported at the outset and not for the first time at trial." (Doc. 8 at 23). As the postconviction court found, Profetto's claim of materiality is conclusory. And Profetto does not identify any prior statement Merryott could have used to impeach Tatijana. This sub-ground lacks merit.

5. *Tatijana drove toward the scene of the crime around midnight*

The prosecutor asked Tatijana when she, Profetto, and Gibson arrived at Profetto's house after leaving his brother's house, just before going to the scene of the crime. She answered, "I'm not sure of the time; midnight, maybe." (Doc. 16 at 337). Profetto claims this statement does not fit into the established timeline of the crime—Robinett was shot around 5:00 or 6:00 a.m. The postconviction court found that even if Merryott missed an opportunity to impeach Tatijana, Profetto failed to "demonstrate a reasonable likelihood that had trial counsel questioned the witness regarding the time she left the Defendant's home that a different outcome would have occurred." (Doc. 20 at 42). The Court agrees. Merryott aptly attacked Tatijana's credibility on cross-examination. Impeaching her recollection of the timeline of the night—about which she had already admitted uncertainty—would not likely have made any difference. This sub-ground is denied.

## F. Trial counsel failed to call an expert on drug use

Profetto argues Merryott denied him an adequate defense by not calling an expert witness to testify about the possible effect of drug use on Tatijana's memory of the crime. The postconviction court found this claim facially insufficient because Profetto failed to state (1) the name of the witness, (2) the substance of the testimony, and (3) that the witness was available to testify.

(Doc. 20 at 43).  It also found the claim meritless because expert testimony

would not have been admissible:

> 21…Expert testimony is generally only admissible when the facts affecting the reliability of testimony are not within the ordinary experience of the jurors and requires expertise beyond the common knowledge of the jurors.  *Johnson v. State*, 393 So. 2d 1069, 1072 (Fla. 1980); §90.702 Florida Statutes.  The admissibility of expert testimony regarding the reliability of eyewitness testimony is left to the sound discretion of the trial judge, and they must consider whether the testimony would have aided the jury in reaching their decision.  *McMullen v. State*, 714 So. 2d 368, 372 (Fla. 1998).  Defendant argues that the average person does not consume narcotic drugs, and therefore is not capable of deciding or understanding without the aid of an expert.
>
> 22. This Court disagrees.  Though the average person may not consume narcotic drugs, they are likely fully aware that a person under the influence of narcotics has a limited cognizance or awareness of their surroundings while so influenced.  Therefore, it is unlikely that the expert testimony would have been allowed at trial, as it would not have assisted the jury in forming their conclusions.  Counsel cannot be deemed ineffective for failing to present inadmissible evidence.  *See Pietri v. State*, 885 So. 2d 245, 252 (Fla. 2004); *Tefteller v. Dugger*, 734 So. 2d 1009, 1020 (Fla. 1999).

(Doc. 20 at 43) (citations to the record omitted).

Profetto notes that the first part of the postconviction court's decision

was contrary to *State v. Lucas*, 183 So.3d 1027 (Fla. 2016), which held that a

Rule 3.850 movant who complains that his attorney failed to call an expert

witness need not name a specific expert.  But Profetto does not identify any

clearly established *federal* law, as required by § 2254.  Nor does he

meaningfully challenge the postconviction court's alternative reasoning—that

the proposed expert testimony would have been inadmissible under Florida law.

Federal habeas courts may "not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). The postconviction court decided that Profetto's proposed expert testimony would have been inadmissible under Florida state law. This Court cannot disturb a state court evidentiary ruling absent some resulting fundamental unfairness, which Profetto has not demonstrated. *See Snowden v. Singletary*, 135 F.3d 732, 737 (11th Cir. 1998). The Court thus accepts that expert testimony on drug use would not have been admissible at trial. It follows that Merryott's decision not to call an expert witness was not deficient representation and that Profetto suffered no prejudice. Ground 6 is denied.

### G. Ground 7: Trial counsel failed to seek DNA testing

Profetto next faults Merryott for not seeking DNA testing of beer bottles and cigarette butts found at the scene of the crime. Profetto claims these items "were not found in a public place but miles from civilization on a desolate road where no other than the perpetrators could have been." (Doc. 8). The postconviction court rejected his argument:

30…Both Defendant and the State agree that no testimony was elicited that indicated the evidence was connected to the Defendant or any particular person. A review of the record confirms a lack of connections. Defendant argues that common sense dictates that no one other than the perpetrators could have left said evidence and relies on *Smyth v. State*, 84 So. 3d 388 (Fla. 4th DCA 2012).

31. In *Smyth*, the court required an evidentiary hearing regarding testing hair found within victim's underwear. The case relied upon by the Defendant is easily distinguishable. A road traversed by anyone at anytime and an intimate article of clothing worn by a victim cannot be considered analogous. Without any testimony linking the evidence, DNA testing would only have served to indicate who had passed by that stretch of road at some point within an indeterminate time frame. As such, Defendant's speculative and conclusory statements that the evidence must have belonged to the perpetrators and DNA testing would have exonerated him are legally insufficient.

(Doc. 20 at 45-46). Profetto responds with speculation that DNA testing could have identified someone "closely affiliated with Dimic." (Doc. 32 at 18). He does not show that the postconviction court's decision was contrary to any clearly established federal law or was based on an unreasonable determination of the facts. Ground 7 is denied.

### H. Ground 8: Trial counsel failed to object to disparate sentencing

Gibson, the other alleged shooter in this case, pled guilty and received a 5-year prison sentence. Profetto argues Merryott should have objected to his disparate 35-year sentence. The postconviction court summarily denied this claim. The 2nd DCA agreed the ground was facially insufficient but remanded with instructions to allow Profetto to amend. The postconviction court denied

the amended ground.  First, it noted that a jury found Profetto guilty of Attempted First Degree Murder and of possessing and discharging a firearm during the commission of the offense.  (Doc. 22 at 387).  Whereas Gibson plead guilty to the reduced charge of Aggravated Battery with a Deadly Weapon.  The court then reasoned as follows:

> 4. The Defendant's ground rests first on the premise that the Defendant and the co-defendant, Jevon Gibson, were equally culpable.  This Court has reviewed the trial transcript contained within the Court file and finds that based on the trial testimony of the victim, Randy Robinett and the co-defendant, Tatijana Dimic, the Defendant and Javon Gibson were not equally culpable.  At trial the victim testified that he knew the Defendant since the third grade, that they were old friends, and had been roommates.  Further, the victim testified that Gibson was a mere "acquaintance," someone that he had said hello to during high school but not someone he "hung out" with.  Additionally, Dimic testified that the Defendant is the one who approached her with the planned robbery.  Although there was some dispute as to whether Gibson was present for this conversation, the uncontroverted testimony was that the Defendant detailed the specific plan, to lure Robinette [sic] out to a desolate street to help her fix her car, to Dimic and sought her assistance in carrying out the plan.  There was no testimony that Gibson participated in this conversation or encouraged Dimic to take part in the plan.  Further, after the plan was botched, the Defendant told Dimic that she was now an accessory and told her not to say anything.
>
> The Court finds that a further review of the disparity in prior criminal record is unnecessary as the Defendant, Gibson, and Dimic were not equally culpable.  Counsel cannot be ineffective for failing to raise a meritless claim.  Further Defendant has failed to show that there is a reasonable probability that he would have received a different sentence has [sic] counsel made such an argument.  As this ground is conclusively refuted by the record, the Defendant's amended claim…is denied.

(Doc. 22 at 387-88) (citations omitted).

Profetto challenges the postconviction court's finding that he and Gibson were not equally culpable.  He points to four pieces of evidence: (1) Tatijana acknowledged on cross-examination that Gibson was in the room when Profetto recruited her to aid in the robbery after testifying on direct that he was not; (2) Robinett testified he saw muzzle flashes from two shooters; (3) two different sized shell casings were found at the scene; and (4) the victim was shot 17 times.  (Doc. 32 at 19).

Profetto fails to establish that the postconviction court's decision was based on an unreasonable determination of the facts.  The evidence he points to is consistent with the court's factual findings, and it does not undermine the court's determination that Profetto and Gibson were not equally culpable. Ground 8 is denied.

## DENIAL OF CERTIFICATE OF APPEALABILITY

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability (COA).  "A [COA] may issue…only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  To make such a showing, a petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard*

*v. Dretke*, 542 U.S. 274, 282 (2004) (*quoting Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were adequate to deserve encouragement to proceed further," *Miller–El v. Cockrell*, 537 U.S. 322, 335–36 (2003) (citations omitted).  Profetto has not made the requisite showing here and may not have a certificate of appealability on any ground of his Petition.

Accordingly, it is now

**ORDERED:**

Petitioner Thomas James Profetto's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 8) is **DENIED**.  The Clerk of the Court is **ORDERED** to terminate any pending motions, enter judgment, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on March 23, 2021.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies:  All Parties of Record